All right. Our final case this morning is United States v. Stacy 25-6029. Good afternoon, your honors. My name is Michael Pabian, and along with Robert Goldstein, who sits at council table, I represent the appellant Matthew Stacy. Before I begin, I'd like to reserve two minutes of my time for rebuttal. May it please the court. Matthew Stacy is an attorney who stands charged as a prolific drug dealer, facing a statutory sentencing range, if convicted, of 10 years to life in prison. Stacy did not grow or traffic marijuana. He did not even invest or participate in the marijuana industry. Rather, he was an attorney for entities applying for licensure to participate in Oklahoma's lawful market for medicinal marijuana. Congress has prohibited federal prosecution in these circumstances. Dating back to December 2014, it has, in each and every Appropriations Act, prohibited DOJ from using funds to prevent states that have legalized medical marijuana from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana. Did Mr. Stacy have to substantially comply with Oklahoma law to take advantage of that? Your honor, there is a dispute about the applicable standard when it comes to Understood, but at the very least, substantial, if not strict. Your honor, our position is that what Mr. Stacy needed to prove below is that a reasonable person in his circumstances would have believed that he was complying with Oklahoma law. Excuse me. Let's, for purposes of argument, assume that that's not the standard, that it's substantial or strict. Then, how do you get past that when you have Oklahoma charging him with 34 offenses? Obviously, Oklahoma doesn't think that he substantially complied or strictly implied. Yes, your honor. It's our alternative position that he did substantially or strictly comply with Oklahoma law. And we understand that the state of Oklahoma has brought charges against Mr. Stacy. But that state prosecutorial decision is, of course, not binding on this federal court whatsoever regarding his compliance or lack of compliance. Okay, but we're talking preliminary injunction, right? Yes, your honor. Unlikelihood of success? Well, your honor, it's not technically a preliminary injunction. It's an injunction under the appropriations rider. I'm sorry if I said preliminary. I just said that out of memory. Understood. But it's an injunction, right? It is an injunction that we're seeking. And the likelihood of succeeding on the merits matters, right? Your honor, in this context, courts have not weighed the likelihood of succeeding on the merits, but have instead just delved directly into the issue of whether the defendant has proven compliance with state law under the applicable standard. And we contend that Stacy has under any standard. All right. Well, the federal district court could reasonably consider that the Oklahoma authorities filing 34 counts against Mr. Stacy, that at least in their judgment, he had not substantially complied with Oklahoma law. In the state prosecutor's judgment, perhaps. But this is an issue of law that is made relevant to the federal charges, that issue here, by Congress, right? Congress is the one that chose to incorporate state law on this issue. If we peek at state law, I mean, you're asking this court to authoritatively interpret Oklahoma law. And if I understand Judge Phillips' question, Oklahoma prosecutors, at least for now, think that he's committed 44 infractions of state law. Are we to second guess that? Or do we wait until that case is completed? Do we ask the Oklahoma Supreme Court for guidance? I mean, that puts us in a really odd position, doesn't it? It may be an odd position. And again, I think that's a result of the way Congress has structured this appropriations rider. But respectfully, second guessing prosecutors is part of what courts do, right? In particular, federal courts. Right now, these are charges. They're as yet unproven allegations that have been brought by the state prosecutorial authority. There's certainly no final judgment against Mr. Stacy on any of those charges at all. But there are a lot of facts that are not disputed, like the two-track on the corporate structure. You're not contesting that that's not so, are you? No, Your Honor. We don't contest that Stacy Legal Group adopted this two-entity structure. And thereby, it's not Oklahoma citizens, 75 percent. It's not just a closed door and there's an indictment behind it and we can't see what's really going on. There are a lot of facts that are undisputed. Well, there are some undisputed facts, Your Honor. But our contention with respect to count one is that this two-entity structure utilized by Stacy Legal Group did not violate any state law. And, in fact, it complied with Oklahoma law. At the relevant time, applying entities simply had to show all members, managers, and board members were Oklahoma residents or that the percentage ownership of any non-Oklahoma residents was 25 percent or less. Now, it's important that the government does not dispute here that the applying entities, which were the licensing companies under this two-entity structure, were 75 percent owned by the local resident. Neither the government nor the district court has cited any statute or regulation requiring disclosure of other entities quote-unquote involved in or quote-unquote responsible for the grow. In fact, after the events at issue, the Oklahoma statute was amended in November 2021 to expressly require disclosure of all ownership interests in the commercial grower operation. The government argument that this was already required prior to the amendment would render the amendment entirely superfluous contrary to a long-standing canon of statutory construction. Now, in response, the government relies on Oklahoma case law about amendments where the prior meaning of a statute was subject to quote serious doubt. But the existence of serious doubt precludes the court from adopting the government interpretation in this criminal context. Alternatively, the government's implied position that the meaning of the Oklahoma statute at issue was subject to serious doubt during the relevant time period supports Stacy's contention that he substantially complied with state law. At bottom, Stacy submitted truthful applications. His failure to volunteer information that was not requested or required did not violate any state law. Now, unless your honors have any further questions on that topic, I'd like to address count two, which is a separately charged count that we submit the courthouse to deal with separately here. In that count, Stacy stands charged with maintaining a premises for purposes of drug trafficking. Stacy rented land in Blanchard to a group of tenants. He told them four times unambiguously and in a recorded conversation that they could not grow marijuana prior to obtaining OBN registration. The government fails to make any argument in this briefing that the recorded call was not between Stacy and his tenants or that it did not occur in the summer of 2021. That is because the call facially establishes those facts in combination with the lease that was introduced as a hearing exhibit. Now, the district court nonetheless refused to enjoin that count because Stacy rented his property with knowledge that the tenants wanted to grow marijuana. The tenants subsequently operated a marijuana farm on the property, and the tenants were selling marijuana without the required licenses. But respectfully, that was simply not sufficient to establish a violation of law by Stacy, especially in light of the uncontradicted evidence that Stacy told the tenants they were not permitted to grow. Permitting prosecution to move forward under these circumstances, your honors, squarely implicates the congressional concern underlying the Appropriations Act. It would expose an almost limitless category of otherwise lawful service providers to potential federal prosecution under the Controlled Substances Act for merely servicing marijuana businesses that may fail to comply with Oklahoma statutes. Is there anything that gives us a better understanding of the purpose of the rider? The language in the rider seems directed at states. They're the federal government challenging state operations and not directly individuals like Mr. Stacy. Is there anything that will illuminate what the scope of the rider was intended to be? I think there is, your honor. Every federal court to address the issue, no fewer than 10 judges, has found that the Appropriations Act rider prohibits federal prosecution of individuals who comply with state law. I know that, but what did they base that determination on? Well, I think they based that, your honor, on the Is that a textual analysis or is there something from the legislative context that would give us some additional clues? Your honor, I think it's a straightforward reading of the text. You know, it's a straightforward proposition in our view that it would prevent states from implementing their own laws if a participant in a state's lawful market for medical marijuana was subject to federal prosecution at the sole discretion of the federal prosecutor. And I think that's why you have this unanimous consensus of federal courts on the issue. And frankly, this court, albeit in dicta, has characterized the rider in exactly those same terms. And if there were any doubt regarding that construction, Congress has clarified that. by repeatedly reenacting materially identical language for more than eight years since McIntosh. The government acknowledges in its briefing that this court must defer to the unanimous construction of the rider unless it is, quote, plainly wrong. The government has not even come close to such a showing, respectfully, your honors. Unless you have any further questions on that issue, I'd now like to briefly address the issue of growth prior to registration. The government does not meaningfully engage with the defense argument that OBN's utter failure to enforce the purported prohibition on growth prior to registration renders Stacy's conduct de facto compliant with state law, or alternatively, a mere technical violation that cannot defeat his request for an injunction. OBN consistently declined to take any adverse action against grows that were openly operating prior to OBN registration. It even told one grower in Stacy's presence that growth prior to registration was, quote, unquote, fine. Independently, the district court never found that Stacy advised clients growth prior to registration was legal. To the contrary, Stacy expressly told clients there was an administrative penalty for such conduct, necessarily implying that it was not lawful. This was fully consistent with OBN's treatment of the issue. To the extent the court believes a ruling on the fact-bound issue of whether Stacy advised clients it was lawful to grow prior to registration is necessary, it should remand for the district court to consider that issue in the first instance. Independently, the government in its briefing says nothing at all about the OMMPPA's provision that an applicant need only submit, not obtain, OBN registration to be entitled to grow an unlimited amount of marijuana. The older statute generally prohibiting manufacture and distribution of drugs cannot override the more recent and specific OMMPPA on this point under the authorities we've cited in our briefing. Additionally, the operating company was an agent of the licensing company, such that registration was not required. The government argument to the contrary is based solely on contractual language, contrary to Oklahoma case law. Your Honor, just before I close, turning back to the issue of the state prosecutorial decision, that is, again, not in any way binding on this court. The case law establishes that states may be prevented from implementing their own medical marijuana laws where the risk of federal prosecution creates fewer market entrants, and that's the First Circuit's decision in Bilodeau. That the mere fact that the state prosecutorial authority has brought a charge is right now proof of nothing. It's only a charge. And on that point, I'd cite, Your Honors, to the McIntosh decision, where the court specifically acknowledged that the federal case arose out of the execution of a Washington state search warrant related to an investigation into violations of Washington's Controlled Substances Act. That did not prevent the Ninth Circuit from going on to hold that a hearing was required under the appropriations rider. Lastly, I'd just note that the findings of the state courts on this issue were expressly preliminary and subject to a presumption that the state will strengthen its evidence at trial. No such presumption is applicable here, unless Your Honors have further questions. Yeah, for this appeal, are you relying primarily on 1292, the appeal from a denial of an injunction, or do you want us to make a finding under the collateral order doctrine that you meet those elements? What's your primary focus here? Your Honor, we believe that jurisdiction exists under both provisions. If Your Honor is asking, you know, what I believe the simpler approach is, I would say it's under 1292A1. The government expressly argued to the district court below, and I quote, this is the very situation for which Congress enacted section 1292A1. And the statutory language clearly applies here. They have changed their mind on appeal. They have changed their mind on appeal, Your Honor, and this Court, of course We do have to make a jurisdictional determination on our own. Of course, Your Honor. But I don't think that the government concession below is, as it advocates,  I think it's a strong indication that this prosecutorial team, when looking at the issue in district court, determined that 1292A1 did apply. And in fact, the statute on its face applies to, quote, interlocutory orders of the district courts refusing injunctions. That's precisely what this is. Does that apply to a criminal case or is that? Your Honor. They argue it's primarily for civil actions. Does it apply in a criminal prosecution? Your Honor, we contend that it does. The statute on its face reflects no limitation to civil cases. There's binding Tenth Circuit precedent in United States v. McVeigh applying 1292A1 to criminal cases. Your Honor, I see that I'm out of time. May I just finish the thought on this issue? You may. The government case law said that there is also a unanimous consensus of persuasive authority supporting jurisdiction under 1292A1. That's McIntosh and Bilodeau, and the government is asking this court to create a circuit split. And finally, the government argument on this point is based on case law that was abrogated decades ago in the Supreme Court's Gulfstream decision. Unless Your Honors have any further questions, I'll rest. Thank you, counsel. Afternoon. May it please the court, my name is Nick Coffey. I'm with me is Stephen Krieger at the council table. We represent the United States. Despite the state of Oklahoma having declared Mr. Stacey's ownership scheme, business scheme, illegal, and having elected to prosecute him, Mr. Stacey somehow argues that the federal charges that he faces here, based on the same conduct, prevent that very state from implementing its medical marijuana regime. The district court's finding below that Mr. Stacey violated several state statutes was absolutely correct. It was not an abuse of discretion. That said, and to go to Your Honor, Judge Timkovich's question at the end, neither 1292 nor 1291 confer jurisdiction on this case. 1292 does not apply to criminal cases. Is there a case that says that? There is. The Second Circuit in Miller has noted, citing the DeBella decision, that 1292 does not apply in the criminal context. We cite the Fourth Circuit decision and research warrant in our brief as well for that position. The Fourth Circuit also relied on DeBella. And that goes to the characterization from Mr. Stacey that this would somehow be creating a circuit that I don't think is accurate, given what the Second Circuit and the Fourth Circuit have said about 1292. He cites McVeigh. What about that? Well, so to use this court's terminology, how it characterized McVeigh, this court characterized it as a curious procedural posture. Yes, of course, it was in the criminal context. I guess my report to that would be, since McVeigh, when this court has heard modifications for judgments in the criminal context, it's treated them under 1291, just the collateral order doctrine. I guess the final judgment rule, reasoning that the orders have sufficient finality to meet 1291's prerequisites. So I think the fact that— But this issue wasn't raised in those cases. I mean, you're not disavowed McVeigh or— I agree, Your Honor. This court has not disavowed— So it does provide some authority, doesn't it? It does. It does. But I do think the fact the way the court has treated this similar scenario since McVeigh at least suggests that perhaps McVeigh doesn't have a ton of precedential value. I'd also point out, though, that the situation in McVeigh was an injunction dealing with the dissemination of information between the federal prosecutors and the state prosecutors. I mean, it was not, certainly does not, I guess, give precedent for the idea that a criminal defendant can wholesale and join a criminal prosecution. And really the problem with 1292, and this is, you know, Mr. States does not want to focus on this, but Gulfport, excuse me, Gulfstream, is very clear that an order from a district court that pertains only to the progress or conduct of litigation before the court is not an injunction for purposes of 1292. And this is exactly what this is, this was below from the district court. It was entirely an order pertaining to whether the case could go forward. It had nothing to do with the sale of assets. It had nothing to do with disseminating information. So at least under Gulfstream, I mean, I don't think Mr. Stacey can get around that jurisdictional problem. Just centering on McVeigh for a moment, because that's an important case, the two cases that you refer to are both supervised release cases, aren't they? The two cases, excuse me, which cases, Your Honor? Well, you mentioned two. You said there were a couple of cases after McVeigh and suggesting that McVeigh may not be as solid as we thought. Yes, dealing with modifications to the judgment, yes, Your Honor. And isn't that a different situation? How helpful are those when we're talking about an entirely different matter with an injunction? And I think that was my point to Judge Moritz's question, is that I don't think it's helpful at all. McVeigh does not stand for the proposition that a defendant can use a spending provision to wholesale and join a criminal prosecution. I'm asking about the two cases, and I guess one's Washington and one is Begay. And I thought, and I probably misunderstood, but I thought you were saying that those somehow deluded McVeigh for our purposes. But they're supervised release cases instead of injunctions, and I wondered if they really mattered much. I don't think they're very, to your point, Your Honor, I don't think that they are very helpful. I don't think they were helpful in this context at all. Okay, thanks. It sounds like the Court's not really going to focus much on the clutter order exception. I would think that, you know, Mr. Stacey does have a serious problem in establishing the third prong of the clutter order exception, where he has to establish that this is effectively unreviewable on appeal. He's got a problem doing that because this Court in Griffith heard a direct on direct appeal, a challenge citing the writer. The Ninth Circuit's heard challenges citing the writer on direct appeal several times. The Sixth Circuit in Trevino. And so, and even what this Court said in the Sandusky decision, dealing with collateral relief and the issue of the BOP spending funds in order, whether that would, you know, violate the writer, particularly with regards to executing a sentence. I think this Court has acknowledged that there is some review available on appeal, which, again, I think goes back to what now Justice Gorsuch has pointed in Wampler that, you know, the question is not whether the remedy is perfect. It's just whether there is some meaningful review available on appeal, and I definitely think that that's met here. I gather from your supplemental briefs that you don't think there's a mootness issue with the new reconciliation bill. Your Honor, I don't. I think it's clear that no language in the act would prohibit the money in the, excuse me, no language in the writer would prohibit the money from the reconciliation bill being used for the prosecution. But that said, it doesn't appear, I mean, the money has not been allotted yet from the reconciliation bill. We learned this morning at least that it was unlikely that it would be authorized, but there haven't been a final decision either way. So I don't think the question of the effect of the reconciliation bill can moot this appeal, if you will. Going to the standard, though, I think that I agree with Your Honor, Judge Phillips, that there is no authority cited for this idea that a reasonable understanding of the law. No circuit has applied that. And I think really when you look at what Mr. Stacey is arguing, he's essentially arguing he can just ignore even administrative violations of the law. But, I mean, even under Bilodeau and even under McIntosh, I mean, both of the Ninth Circuit and the First Circuit discuss, you know, arguably it's clear that both of those circuits agree with the notion that regulations themselves form a part of a state's comprehensive medical marijuana regime. So the notion that somehow administrative law should simply be discarded, I don't think there's any authority in the statute. Now, even before you get to the issue of compliance, I think that Mr. Stacey has a real problem in showing how a spending provision that prevents the DOJ from spending funds that would stop a state from implementing its medical marijuana regime. I mean, the question then, I guess, in any prosecution dealing with the writer is going to be, okay, who in that state is the party that implements a state's medical marijuana regime, assuming that you get past the jurisdictional questions? And here it's very clear in Oklahoma law that, you know, Article VI of the Oklahoma Constitution says that the executive branch is tasked with implementing, uses that word, all mandates passed by the legislature. But crucially for our purposes, the Oklahoma Medical Marijuana Patient Protection Act, which is called the Act, the Act says that it is the Oklahoma Medical Marijuana Authority that implements. Again, it uses that word, implements, the Act. And so I think it's clear just based on the Oklahoma Constitution, the way that the OMMPPA is written, that it is the state authority, the Oklahoma Medical Marijuana Authority that implements state law. It is not Mr. Stacey, a private citizen. Now, Judge, the other cases suggest, well, if the feds can go after individual participants in the market, that that's going to have the same effect as preventing the state from implementing lawful conduct. The cases do say that. I don't think that's a fair characterization. Even in the Ninth Circuit, it's not as if no one is entering the medical marijuana industry, despite the fact that the strict compliance standards have been around for a while. I mean, even under the lesser substantial compliance standard from the First Circuit, I'd point out that Bilodeau is quite clear. It said that surely the rider was not meant to give safe harbor to individuals that were blatantly violating the law, or that the state itself had identified as being illegal. And here, I mean, I think the characterization just moments before was that somehow this is just a Garvin County assistant district attorney that has decided to bring this case against Mr. Stacey, identified 34 felony counts. But no, I mean, it is the OBN general counsel and OBN chief agent, both of whom told Mr. Stacey that he was in violation of state law long before many of the later violations that OBN found. It is the attorney general's office itself. It is two state court judges. And one of those state court judges made this determination after hearing seven days of preliminary hearing and issuing an 86-page order. And so while I certainly don't think that Judge Timkovich, your earlier question about whether it's binding on this court, I'm not sure I'd use the term binding, but I think it's pretty darn persuasive, given — the proceedings are ongoing. It seems odd that there would be a parallel state and federal prosecution. And certainly it seems difficult for this panel to decide substantial compliance when the state of Oklahoma certainly has a lot of allegations. But there's been no conclusive determination that Stacey was not in compliance with state law. Well, but I think to an earlier question about — I mean, there are a lot of things that Mr. Stacey's not contesting that isn't in dispute. I mean, it's not as if it is a he said, she said, for lack of a better way to put it, they're unfounded allegations. I mean, there's no question right about what the business structure was. And so if he's going to admit to what his business structure was, and the attorney general's office, OBN, state court judges are all going to look at this and say, yes, it's actually illegal because you're not applying with the OBN registration requirements. You're not disclosing all ownership interests. You're not, you know, you're not submitting information in a truthful way. I think that is fairly persuasive. I think under Mr. Stacey's argument, I mean, what's the idea that he — that there's not a determination on the legality of his conduct with state law until the Oklahoma Supreme Court weighs in on every single provision? I mean, I don't think that is reasonable in practice. And one thing I would point out on the statutes that the district court and the state court judge found that he violated, there were several of them. But moments before, I think Mr. Stacey's counsel represented that, you know, nowhere did the state court ever identify, you know, how he wasn't submitting ownership interests truthfully. No, the state court did. Excuse me, the district court did. It is in the opinion and it cites the state provision that says that an owner, for purposes of the Oklahoma's Medical Marijuana Act, is any interest that owns a — that owns a convertible interest or equity in any operation or any entity that operates, manages, or controls a licensed farm. And that is precisely what Mr. Stacey was not submitting to both the OBN and the OMMA. And so there was that problem. He obviously is not, you know, he is not complying with the OBN registration problem. I don't hear him, I don't hear any argument that he actually thinks he was complying with it. I think his argument is that, well, I didn't comply with it, but they weren't really enforcing it at the time. Again, I take this to be an entrapment by estoppel defense. I'm not aware of any court that has held that that is relevant in the context of the rider. I think Trevino and the Sixth Circuit said it best when dealing with some of the similar arguments when it noted that the Controlled Substances Act is plain to, quote, lawyer and layman alike. And the provisions here were clear. The provisions, I would argue, in Oklahoma statute were clear. And these provisions he directly disregarded. Thank you. Thank you, counsel. Counselor, excuse, I think we ran out of time for the appellant. I could give you 60 seconds if you'd like it. Yes, Your Honor. I will talk to you later. May it please the Court. The government repeatedly asked this Court to disregard authority, both on the jurisdictional issue, where it does, indeed, advocate a circuit split with the only two courts of appeals to have squarely addressed this question under 1292A1, and also with respect to McVeigh, which exclusively relied on that provision and has never been questioned by this Court or any other. The government also asked this Court to disregard the consensus of 10 federal judges in their construction of the rider. With regard to the point about an alleged failure to disclose the owners of a company operating the marijuana grower, the owners of the operating entity were disclosed, as set out in our briefs, because they were 25 percent owners of the licensing company. OBN had their contact information and was able to contact them if necessary. With respect to the requirement, the alleged prohibition on growth prior to registration, we've cited three independent bases in our briefs for why Stacy did not violate any statute with respect to that, unless there are any questions. What is the status of the state prosecution? It's my understanding, and I'm not involved in the state prosecution, but my understanding is that that prosecution has been stayed pending the federal case. Okay. Thank you, Counsel. You're excused, and the case is submitted.